IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number:

MATTHEW ROTH and SHAYL WILSON,

Plaintiffs,

v.

JAMES CARSON and WERTHWHILE LLC d/b/a INLET BAY MARINA,

Defendant(s).

---

## COMPLAINT FOR DAMAGES AND JURY DEMAND

---

COMES NOW, Plaintiffs, Matthew Roth and Shayl Wilson (elsewhere "Plaintiff Roth and Plaintiff Shayl Wilson") by and through their attorneys, Ramos Law, and for their Complaint against the Defendants James Carson and Werthwhile, LLC d/b/a Inlet Bay Marina (elsewhere "Defendant James Carson, Defendant Werthwhile, LLC and Defendant IBM") and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1.  The parties to this action are citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S. Code § 1332.

2.  Venue is proper in this judicial district as a substantial part of the events giving rise to Plaintiffs' claims took place in this judicial district. 28 U.S. Code § 1391.

3.  Plaintiff Roth is, and at all material times was, a resident of the State of Iowa.

4.  Plaintiff Wilson is, and at all material times was, a resident of the State of Illinois.

5.  Defendant Werthwhile, LLC is a limited liability corporation, with its principal place of business in the State of Colorado.

6.  Defendant Carson is, and all material times was, a resident of the State of Colorado.

## GENERAL ALLEGATIONS

7.      Plaintiffs Roth and Wilson incorporate by reference each and every allegation made in paragraphs 1 through 6 as though fully set forth herein.

8.      On or about August 8, 2020, Plaintiffs Roth and Wilson were passengers on a boat being operated by Adam Schwery.

9.      On or about August 8, 2020, Plaintiffs Roth and Wilson were 2 of 6 total occupants on a boat in the Horsetooth Reservoir.

10.     The boat Plaintiffs Roth and Wilson occupied needed fuel.

11.     The boat Plaintiffs Roth and Wilson occupied approached the gas dock controlled by Defendant IBM.

12.     Defendant Carson was on the fuel dock controlled by Defendant IBM on August 8, 2020.

13.     Defendant Carson was employed by Defendant IBM on August 8, 2020.

14.     Defendant Carson was acting within the scope of his employment with Defendant IBM on August 8, 2020.

15.     Defendant Carson made contact with Plaintiffs Roth and Wilson.

16.     Defendant Carson was instructed to fill the gas tank of Plaintiffs' boat up.

17.     Defendant Carson did not ask for the cap of the gas tank to be opened.

18.     Defendant Carson saw an open cylinder on the Plaintiffs' boat.

19.     Defendant Carson did not clarify if the open cylinder was for fuel.

20.     Defendant Carson inserted the fuel dispensing device into the cylinder.

21.     Defendant Carson began releasing fuel into the open cylinder.

22.     Defendant Carson put at least .7 gallons of boat fuel into the cylinder.

23.     Defendant Carson was informed by a coworker that Defendant Carson was putting the gas into the wrong spot.

24.    Defendant Carson stopped putting fuel into the cylinder.

25.    Defendant Carson opened the gas tank.

26.    Defendant Carson began fueling the gas tank.

27.    Defendant Carson finished fueling the tank.

28.    Defendant Carson obtained payment information from the Plaintiffs.

29.    Defendant Carson returned the Plaintiffs receipt.

30.    Defendant Carson pushed the boat away from the dock.

31.    Defendant Carson did not inform the Plaintiffs he had placed fuel inside the cylindrical rod.

32.    Defendant IBM instituted Fueling Spill Prevention, Response, & Safety policies (hereinafter "safety policy") in 2018.

33.    Defendant IBM's safety policy was provided to all personnel during training.

34.    Defendant Carson underwent job training at IBM.

35.    Defendant IBM's safety policy section on spill prevention indicates a potential spill will most likely occur during tank and watercraft refueling.

36.    Defendant IBM's safety policy indicates all employees have responsibility for their own and others safety.

37.    Defendant IBM's safety policy indicates employees must follow proper boat filling procedures.

38.    Defendant IBM's safety policy requires employees to have the captain of the boat remove the fuel cap.

39.    Defendant IBM's safety policy requires employees to confirm the opening is the fuel fill port prior to fueling.

40.    Defendant IBM's safety policy requires evacuation to protect human health in the event of a fuel spill

41.    Defendant IBM's safety policy requires elimination of potential ignition sources in the event of a spill.

42.     Defendant IBM's safety policy requires employees to notify management in the event of a spill.

43.     Defendant Carson did not evacuate the Plaintiffs from the boat.

44.     Defendant Carson did not eliminate potential ignition sources.

45.     Defendant Carson did not notify management.

46.     Plaintiffs tried starting the boat once away from the dock.

47.     Plaintiffs, after several attempts, were finally able to start the motor.

48.     Upon the motor starting, the fuel placed in the open cylinder of the boat ignited, causing an explosion.

49.     As a result of the explosion, Plaintiff Roth experienced a partial thickness  burn of his right and left feet and right and left lower legs.

**50.**     As a result of the explosion, Plaintiff Wilson experienced partial thickness burns to his left forearm and to his left and right lower extremities.

### **FIRST CLAIM FOR RELIEF – NEGLIGENCE**
### *(Directed to All Defendants)*

51.     Plaintiffs Roth and Wilson incorporate by reference each and every allegation made in paragraphs 1  through 50 as though fully set forth herein.

52.     Defendants owed a duty of reasonable care to the Plaintiffs when fueling their boat.

53.     Defendants were solely in control of the fueling process.

54.     Plaintiffs were not allowed to fuel their own boat.

55.     Defendants failed to confirm the open cylinder was in fact the gas tank.

56.     Defendants put fuel in the cylinder.

57.     Defendants realized the open cylinder was not the fuel tank and stopped putting fuel in.

58.     Defendants placed fuel in an unauthorized container.

59.     Defendant Carson's placement of fuel into an unauthorized container created a dangerous condition.

60.     Defendants had a duty to warn Plaintiffs of the dangerous condition.

61.     Defendants did not warn Plaintiffs of the dangerous condition.

62.     Defendants opened the proper fuel tank and began fueling this tank instead.

63.     Defendants failed to warn Plaintiffs of improper fueling.

64.     Defendants failed to warn Plaintiffs of a fuel spill on their boat.

65.     Defendants' failure to place fuel in the proper container caused Plaintiffs' boat to explode upon starting the engine.

66.     Plaintiffs' boat exploding caused the Plaintiffs' injuries.

67.     As a direct and proximate result of the conduct of Defendants Carson, Werthwhile, and IBM, Plaintiffs suffered injuries, losses, and damages.

## SECOND CLAIM FOR RELIEF
### *Negligence Per Se*

68.     Plaintiff Roth and Wilson incorporate by reference each and every allegation made in paragraphs 1 through 67 as though fully set forth herein.

69.     By recklessly causing an explosion, Defendant Carson acted in violation of C.R.S. § 18-4-105(1)(2), "Fourth Degree Arson."

70.     Plaintiffs Roth and Wilson are members of the class or persons that the above-referenced criminal law was intended to protect, and Plaintiffs' injuries are a type the law was signed to prevent.

71.     The above-described actions of Defendant constitute negligence *per se*.

72.     As a direct, proximate, and foreseeable result of the negligence and breach of the duty of reasonable care by Defendant Carson, Plaintiffs Roth and Wilson suffered physical injuries, permanent impairment, permanent disfigurement, physical pain and suffering, loss of enjoyment of life, emotional distress, mental anguish, lost time and income, underwent rehabilitation, and incurred medical and related

expenses. Plaintiffs Roth and Wilson's injuries will result in medical and related expenses in the future; future rehabilitation; and further expenses

## SECOND CLAIM FOR RELIEF
### *Negligence Per Se*

73.     Plaintiffs Roth and Wilson incorporate by reference each and every allegation made in paragraphs 1  through 72 as though fully set forth herein.

74.     By recklessly causing bodily injury to another person by means of a deadly weapon, an explosion, Defendant Carson acted in violation of C.R.S. § 18-3-204(1)(a), "Assault in the third degree."

75.     Plaintiffs Roth and Wilson are members of the class or persons that the above-referenced criminal law was intended to protect, and Plaintiffs' injuries are a type the law was signed to prevent.

76.     The above-described actions of Defendants constitute negligence *per se*.

77.     As a direct, proximate, and foreseeable result of the negligence and breach of the duty of reasonable care by Defendants, Plaintiffs Roth and Wilson suffered physical injuries, permanent impairment, permanent disfigurement, physical pain and suffering,  loss of enjoyment of life, emotional distress, mental anguish, lost time and income, underwent rehabilitation, and incurred medical and related expenses. Plaintiffs' injuries will result in medical and related expenses in the future; future rehabilitation; and further expenses

**WHEREFORE**, Plaintiffs, MATTHEW ROTH and SHAYL WILSON, request that Judgment be entered in favor of the Plaintiffs and against the Defendants, in an amount sufficient to fairly compensate them for the injuries as set forth above, court costs, attorney fees, expert witness fees, statutory interest from the date this cause of action accrued, or as otherwise permitted under Colorado law, and for such other and further relief as this Court deems just and proper, and/or Plaintiff pray for the following relief:

(a)     For an amount which will reasonably compensate them for past and future economic loss;
(b)     For an amount which will reasonably compensate them for medical expenses, past and future;
(c)     For an amount which will reasonably compensate them for permanent limitation, injuries, and/or disfigurement of the body and/or mind;
(d)     For an amount which will reasonably compensate them for pain and suffering, past and future and other non-economic damages;
(e)     For an amount which will reasonably compensate them for loss of the enjoyment life and/or the capacity to live a full life; and

(f)     For interest as Complaint to the date of verdict or judgment, and for costs and fees incurred in the prosecution of this matter, and any further and other relief as the Court my deem just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted this 13th day of May 2022.

RAMOS LAW

*/s/ Nathanael L. Wright*
Nathanael L. Wright, Esq.
Clarence E. Gamble, Esq.
*Attorneys for Plaintiff*
*Original signatures on file at Ramos Law.*

Plaintiffs' Address
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260